IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                   |   |                              |
|-----------------------------------|---|------------------------------|
| JOHN HALL and MONICA M. BAHENA    | : |                              |
|                                   | : |                              |
| v.                                | : | Civil Action No. DKC 25-4101 |
|                                   | : |                              |
| CAMDEN DEVELOPMENT, INC.          | : |                              |
|                                   | : |                              |

**MEMORANDUM OPINION**

After this court remanded this action based on the then-operative complaint for lack of standing,[1] Plaintiffs John Hall and Monica Bahena ("Plaintiffs") filed an Amended Class Action Complaint in state court against Camden Development, Inc. ("Camden" or "Defendant") arising from their experience in leasing an apartment. (ECF No. 6). Camden removed again, citing federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453 ("CAFA"). (ECF No. 1). Plaintiffs have moved to remand. (ECF No. 12). Defendant filed a response (ECF No. 14). No reply was filed. For the following reasons, the motion to remand will be granted.

**I.   Background**

This is a putative class action brought by Plaintiffs pursuant to the Maryland Consumer Protection Act, the Maryland Consumer

---

[1] *See Hall v. Camden Development, Inc.*, No. 25-cv-0366-DKC, 2025 WL 2958829 (D.Md. Oct. 17, 2025).

Debt Collection Act, and Maryland common law. Plaintiffs, former tenants of an apartment managed by Defendant, contend, among other things, that Defendant failed to disclose mandatory charges for utilities billed under a Ratio Utility Billing System ("RUBS") in its advertising and engaged in false and misleading marketing through third-party listing platforms, leading prospective tenants to pay nonrefundable application fees before learning the true cost of living at the property.

Defendant operates large multifamily housing developments throughout Maryland and the United States. (ECF No. 6 ¶ 2). Four developments are located in Maryland, including Camden College Park, which has 509 units. The others are Camden Fallsgrove with 268 units, Camden Shady Grove with 457 units, and Camden Washingtonian with 365 units. (*Id.*).

In March 2024, Plaintiffs began looking for an apartment "that met both their budget and geographic preferences." (*Id.* ¶ 19). Their budget was no more than $1,800 per month. (*See id.*). Defendant advertises its rental units on its own website and on third-party websites such as "Zillow, Trulia, Apartments.com, and Realtor.com." (*Id.* ¶ 13). While on Zillow, Plaintiffs found a rental unit in Defendant's Camden College Park complex available for $1,729 per month. (*Id.* ¶ 20). On March 17, 2024, Plaintiffs paid a $50 application fee to apply for the unit they had found.

2

(*Id.* ¶ 21).  "Plaintiffs were later approved for a lease and executed a written Lease Agreement" with Defendant around March 23, 2024, for the Camden College Park unit, (*Id.* ¶ 22), at a monthly "base rent" of $1,729, (*Id.*).  After signing the lease, Plaintiffs learned that Camden imposed additional mandatory fees, including a monthly charge for utilities using RUBS.  (*Id.* ¶ 23). This system does not charge based on actual usage.  Rather, the charge is calculated by dividing the master utility bill among all units "using an undisclosed formula that includes variables such as square footage, number of occupants, or arbitrary 'allocation factors.'"  (*Id.* ¶ 24).

    Plaintiffs contend that Maryland Real Property Code § 8-212.4[2] regulates the use of RUBS and requires that the method be "fully disclosed in writing prior to lease execution," that the tenant receive "advance notice of the average monthly utility cost for similarly sized units," and that the tenant be "provided with documentation sufficient to verify the landlord's computation."

---

[2] The Tenant Protection Act of 2022 was added by 2022 Md. Laws, ch. 34, effective June 1, 2022.  That act contains the following provision: "A lease provision that requires a tenant to pay the utility charges billed to the tenant under a ratio utility billing system shall be unenforceable if the landlord fails to provide the information required under paragraph (1) of this subsection to the tenant in writing."  Md. Code Ann., Real Prop. § 8-212.4(c)(2) (West).

3

(*Id.* ¶ 25).  Plaintiffs contend that Camden's lease documents and rental advertising fail to satisfy those statutory prerequisites. (*Id.* ¶ 26).  After moving in, Plaintiffs were billed approximately $164 per month for water and sewer services, "nearly double the Prince George's County median residential water-and-sewer charge of roughly $90 per month, as published by the Washington Suburban Sanitary Commission."  (*Id.* ¶ 27).

Plaintiffs seek actual damages in an unspecified amount, punitive damages, and attorney's fees, as well as declaratory and injunctive relief.  (*Id.* at 21–22).

## II. Standard of Review

Plaintiffs move to remand pursuant to 28 U.S.C. § 1447(c), which provides in part that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  The removing party asserting federal jurisdiction has the burden to demonstrate that removal is proper.  *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008).  Perhaps unlike other types of removal, CAFA removal is not subject to a presumption against removal.  Congress enacted CAFA to "facilitate adjudication of certain class actions in federal court," meaning that "no antiremoval presumption attends cases invoking CAFA."  *Lyles v. Santander Consumer USA Inc.*, 669 F.Supp.3d 469, 474 (D.Md. 2023) (quoting *Dart Cherokee*

4

*Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). Nevertheless, a defendant must still demonstrate that removal is proper when challenged:

> As relevant here, CAFA relaxes diversity jurisdiction requirements and provides district courts authority over class actions with (1) more than 100 class members, (2) an amount in controversy exceeding $5,000,000 and (3) minimally diverse parties. 28 U.S.C. § 1332(d)(2), (5). A defendant invoking CAFA to remove a class action from state court must file a notice of removal in the proper district court "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The defendant bears the burden of alleging that CAFA jurisdiction exists, *Strawn*, 530 F.3d at 296, and must file the notice of removal within 30 days from receipt of the initial pleading. 28 U.S.C. § 1446(b). Because "no antiremoval presumption attends cases invoking CAFA . . . a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*[, 574 U.S. at 89] (citations omitted).

*Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017).

> If the plaintiff challenges removal, however, the defendant "bears the burden of *demonstrating* that removal jurisdiction is proper." *Strawn*, 530 F.3d at 297. When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to "show . . . what the stakes of litigation . . . are given the plaintiff's actual demands." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis omitted). To resolve doubts regarding a defendant's asserted amount in controversy, "both sides submit proof and the court decides, by a preponderance of the

5

> evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, [574 U.S. at 88].

*Scott,* 865 F.3d at 194.

> "To determine whether the jurisdictional minimum is satisfied, the district court looks to the aggregated value of class members' claims." *Bartnikowski v. NVR, Inc.*, 307 F.App'x 730, 734 (4th Cir. 2009) (citing 28 U.S.C. § 1332(d)(6)). Where plaintiffs leave damages unspecified in their complaint, the defendant has the burden to establish the jurisdictional amount by a preponderance of the evidence to remove the case to federal court under CAFA. *Id.* The Fourth Circuit has specified that defendants cannot reach the amount in controversy requirement through speculative assumptions but must support their assumptions with any evidence. *Id.* at 736.

*Russo v. Eastwood Constr. Partners, LLC*, No. 22-cv-1686, 2023 WL 2386453, at *7 (D.S.C. Mar. 7, 2023).

**III. Analysis**

The Amended Complaint proposes two classes:

> Application Fee Misrepresentation Class: All persons who, within the applicable limitations period, paid a nonrefundable application fee to lease a Camden-managed apartment in Maryland after viewing a rental listing on Camden's website or a third-party platform . . . that failed to disclose mandatory RUBS or other recurring monthly charges.
>
> Utility Billing Class: All persons who, within the applicable limitations period, were tenants in a Maryland residential property owned or managed by Camden and who paid for water, sewer, or other utilities under Camden's [RUBS] without being provided i) a copy of the last two utility bills issued to

6

> the landlord; ii) the average monthly bill for all dwelling units in the residential property in the previous calendar year, by utility; and/or iii) a citation to the relevant section of the law, as required by Md. Code Ann., Real Prop. § 8-212.4(c)(1).

(ECF No. 6 ¶ 51). The amended complaint alleges that Camden manages more than 1700 units in Maryland. (*Id.* ¶ 54). There is no estimate of the number of persons who paid the application fee.

The notice of removal contends that the Amended Complaint justifies removal under CAFA because the number of claimants is well over 100, the minimal diversity requirement is satisfied, and there is over $5,000,000 in aggregate damages. (ECF No. 1 ¶ 29). It posits that, if 1700 units are involved, and each overpaid by $74 per month, there would be more than $5,000,000 at issue even if the limitations period started in 2022. (*Id.* ¶ 43 & n.3). At the threshold, Defendant's calculation contains a glaring error: The time between November of 2022 and November of 2025 is three years, or 36 months, not the 48 months the removal notice states. (*See id.*). The Amended Complaint does not allege a starting date for the claims but merely seeks coverage "within the limitations period." As Defendant recognizes, that period might well relate back to the initial complaint and thus permit recovery back to November of 2021, increasing the damages calculation by an additional twelve months, or four years prior to the filing of the Amended Complaint. (*Id.* ¶ 43 & n.4). (As noted above, however,

7

the Maryland statute regulating the use of RUBS did not go into effect until June of 2022.)

Plaintiffs make two arguments. First, Plaintiffs agree to limit recovery to less than $5 million, thus negating a sufficient amount in controversy.[3] (ECF No. 12, at 2). Second, they argue that Defendant's amount in controversy showing rests on "stacked assumptions" and relies on maximizing every possible variable: the number of apartments subject to RUBS, the number of months each apartment was occupied, whether statutory notices were uniformly absent, and whether the average overcharge was lower than $74 per month. (*Id.*).

Defendant answers only some of those questions in its response. Defendant's response provides a declaration attesting to which properties in Maryland were subject to the challenged utility rate charges, **reducing** the total number of apartments from 1700 to 1331. (ECF No. 14-1 ¶ 9). Otherwise, despite much of the relevant information presumably being within Defendant's control, it produced **no** evidence and merely continues to rely on the facts alleged in the Amended Complaint.

---

[3] Because Defendant fails to demonstrate a sufficient amount in controversy, it is not necessary to determine whether Plaintiffs' post-removal limitation has any effect on jurisdiction.

8

Thus, the record reflects that three of the apartment complexes, with 1331 total apartments, were subject to the challenged utility rates, which were uniformly used for all tenants.  There is no indication that any tenant received the kind of notice plaintiffs contend was required, so all of those tenants are included.  On the other hand, there is no evidence as to how often, on average, occupancy turned over, or how many months apartments were vacant on average when the tenancy turned over. Defendant does not explain why it is reasonable, and not speculative and likely unrealistic, to count every apartment for every month within the limitations period.  Furthermore, there is no evidence showing why it is reasonable to assume that Plaintiffs' overcharge of $74 per month is a reasonable average to use for all of the apartments.  Here, while the $74.00 figure was provided by Plaintiffs as an estimate of **their** overcharge, and Plaintiffs assert that their claim is typical of the class, Plaintiffs do not allege that the overcharge billed to others was of similar size. Defendant does not provide evidence that allows the use of that figure as an average overcharge across all apartments, of any size or number of occupants.  Thus, as in *Bartnikowski*, Defendant's assertion of an amount in controversy falters.  307 F.App'x at 735 ("NVR's ultimate estimate of the amount in controversy, however, is fatally undermined by the wholly unsupported assumption on which

9

its calculations ultimately rest—that Plaintiffs and class members will each claim to have worked an average of five hours of overtime per week.").

The Application Fee Class, as noted above, is not quantified at all either in the Amended Complaint or Defendant's papers. At $50 per application, there would have to be 100,000 persons in the class to meet the amount in controversy requirement. Defendant does not even argue as much. It merely suggests that the damages for this class would "likely exceed $200,000." (ECF No. 14, at 6). Given the uncertainty of the Utility Billing Class's damages, this figure does little to tip the scales in Defendant's favor.

Ultimately, a defendant must do more than here:

> In identifying the amount in controversy, a defendant may "rely to some extent on reasonable estimates, inferences, and deductions." *Scott*[, 865 F.3d at 196]. However, "[t]o meet its burden, [a defendant] must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court." *Id.* at 197; *see also Brennan v. Stevenson*, No. [15-cv-2931-JKB], 2015 WL 7454109, at *6 (D.Md. Nov. 24, 2015) ("Courts may not engage in conjecture, speculation, or judicial star gazing to determine jurisdiction.") (quoting *Kamau v. Slate*, No. [11-cv-522], 2013 WL 1883257, at *3 (N.D.Fla. Apr. 4, 2013)) (cleaned up); *Osia v. Rent-a-Center, Inc.*, No. [15-cv-1200-DKC], 2015 WL 3932416, at *5 (D.Md. June 25, 2015) ("To allow removal of this case based on Defendant's speculation as to a possible final damage award would eviscerate the amount in controversy requirement.").

10

*Ayers v. CIOX Health, LLC*, 735 F.Supp.3d 607, 615 (D.Md. 2024).

Defendant also contends that punitive damages and attorney's fees can make up some of the balance. Again, however, it does not provide any evidence, or frankly any argument, of specific amounts that would be recoverable. It is not up to the court to supply those numbers. Judge Blake recently reached a similar conclusion:

> Santander contends that the amount in controversy must account for attorneys' fees. Santander merely speculates, however, that adding attorneys' fees to the class's damage amount would "easily" take the amount in controversy above $5 million. Suppl. Opp'n to Mot. to Remand at 9. But it provides no concrete "facts" that would allow the "court to determine" the class's attorneys' fees could approach the nearly $1.5 million necessary to fill the shortfall between the class's potential damages and CAFA's threshold. *See Scott*, 865 F.3d at 197.

*Lyles,* 669 F. Supp. 3d at 476.

**IV. Conclusion**

Accordingly, Defendant has not demonstrated a sufficient amount in controversy to support federal jurisdiction under CAFA. The motion to remand will be granted. A separate order will be entered.

                                                 /s/
                                     DEBORAH K. CHASANOW
                                     United States District Judge